IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

WILLIAM J. D.

                    Plaintiff,

                                        Civil Action No.
                                        1:17-CV-0981 (DEP)

        v.

COMMISSIONER OF SOCIAL
SECURITY,

            Defendant.
_____

APPEARANCES:                            OF COUNSEL:

FOR PLAINTIFF:

WILLIAM J. D., *Pro se*
123 County Route 51
Coxsackie, NY 12051

FOR DEFENDANT:

HON. GRANT C. JAQUITH                   GRAHAM MORRISON, ESQ.
United States Attorney for the          Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261


DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

<u>DECISION AND ORDER</u>

This is an action brought by *pro se* plaintiff William J. D. pursuant to 42 U.S.C. § 405(g), challenging a determination by the Acting Commissioner of Social Security ("Commissioner") finding that he was not disabled at the relevant times, and therefore ineligible to receive disability insurance benefits ("DIB") pursuant to Title II the Social Security Act. In support of his challenge to the Commissioner's determination, plaintiff argues that the residual functional capacity ("RFC") determined by the administrative law judge ("ALJ") was not supported by substantial evidence.

Having carefully reviewed the record that was before the agency and applied the requisite deferential standard, I find that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, for the reasons that follow, the Commissioner's determination is affirmed, and plaintiff's complaint is dismissed.[1]

I.      <u>BACKGROUND</u>

Plaintiff was born in August 1959, and is currently fifty-nine years of

---

[1]      This matter is before me on consent of the parties, pursuant to 28 U.S.C. § 636(c) and General Order No. 18 of this court. *See* Dkt. No. 4.

age. Administrative Transcript at 38.[2] At the time of his alleged disability

onset date of March 30, 2013, plaintiff was fifty-four years of age. AT 38.

Plaintiff is married and has twelve children, six of whom live at home. AT

39-40, 523, 575.

Plaintiff received a high school education, and was employed by the

New York State Department of Corrections and Community Supervision

as a corrections officer from November 30, 1981 until March 30, 2013. AT

42-43; *see* AT 177. Since that date, he has not worked, volunteered, or

searched for employment. AT 43. Plaintiff has been receiving a disability

retirement pension from the State of New York since June 27, 2013. AT

41.

Plaintiff suffered a right shoulder injury in March 2013 when he

pulled a box from a truck at work. AT 43, 47, 51; *see also* AT 231. On April

15, 2013, orthopedist Kyle R. Flik ("Dr. Flik") performed surgery on

plaintiff's right shoulder in the form of an arthroscopy, debridement of

superior labrum, subacromial decompression and distal clavicle resection.

AT 44; *see also* AT 251-52, 280-82. Dr. Flik has since indicated that

---

[2]     The administrative transcript, which consists of a compilation of medical records
and other evidence that was before the agency at the time of its determination in this
matter, and was filed by the Acting Commissioner on April 3, 2018, Dkt. No. 12, will be
hereinafter cited as "AT ___."

plaintiff is a candidate for right shoulder replacement surgery. AT 47; *see also AT* 492, 495, 584, 632.

In addition to degenerative joint disease of his right shoulder, plaintiff's medical records reflect that he also suffers from, *inter alia*, degenerative disc disease of the cervical and lumbar spine, and a bilateral leg disorder. AT 44; *see generally* AT 190-638. A magnetic resonance imaging ("MRI") scan of plaintiff's cervical spine conducted in January 2014 revealed multilevel degenerative changes with a left-sided C7-T1 disc herniation and moderate to severe stenosis at C4-C5. AT 528-29. In addition, an MRI of plaintiff's lumbar spine conducted in April 2013 revealed multilevel degenerative pathology. AT 560-61

Plaintiff testified that he experiences daily "constant pain" that "never goes away" in his neck, head, shoulders, back, knees, and left foot. AT 44-45. Plaintiff has received some relief from constant pain from injections, physical therapy, chiropractic care, and pain medication. AT 44-47.

Although plaintiff's gait is largely described by his medical providers, including Dr. Eugene Kaplan ("Dr. Kaplan"), as being normal, *see, e.g.*, AT 220-29, 592-621, he testified that he has difficulty both in walking and ascending stairs. AT 47-48. Plaintiff also testified that he has difficulty turning his head, and is unable to regularly lift more than ten pounds or

work overhead. AT 48, 52-54. Plaintiff also described having difficulties

with his short-term memory and concentration, although he is able to

follow a story on television. AT 48-49, 54-55; *but see, e.g.*, AT 523-27.

Plaintiff is capable of caring for his own personal hygiene, but

occasionally has difficultly with donning and doffing his clothes. AT 50, 54,

525. He is also able to drive, cook, perform light housework, and manage

his money. AT 41, 49, 525. On a typical day, plaintiff watches television,

listens to the radio, tidies his home, or spends time with his family. AT 525.

Plaintiff denied partaking in any hobbies, but noted that he does attend a

two-hour church service two times per week. AT 51-52, 525.

II.    PROCEDURAL HISTORY

A.    Proceedings Before the Agency

Plaintiff applied for DIB pursuant to Title II of the Social Security Act

on September 11, 2013.[3] AT 136-142. In his application, plaintiff alleged a

disability onset date of March 30, 2013. AT 136. Plaintiff's claim was

---

[3]    On January 18, 2017, the Social Security Administration ("SSA") published a
final rule that changed the protocol for evaluating medical opinion evidence. *See*
Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence, 82 Fed.
Reg. 5844 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404 & 416). Those new regulations
apply only to claims filed with the SSA on or after March 27, 2017. Because plaintiff's
claim was filed on prior to that date, to the extent that the regulations are cited in this
decision, I am referring to versions of the regulations that were in effect prior to March
27, 2017.

initially denied on November 27, 2013. AT 78-83.

On April 8, 2015, upon plaintiff's request, ALJ Dale Black-Pennington conducted a hearing to address plaintiff's application for benefits; at that hearing, plaintiff and a vocational expert testified. AT 34-65; *see also* AT 84-85, 88-95, 106-33. Thereafter, on April 22, 2015, ALJ Black-Pennington issued a written decision in which she concluded that plaintiff was not disabled at the relevant times, and is therefore not entitled to the benefits that he sought. AT 12-33.

In her decision, after determining that plaintiff was insured for disability benefits under Title II through December 31, 2017, ALJ Black-Pennington proceeded to apply the well-settled, five-step sequential test for determining disability.[4] AT 12-33. At step one, she concluded that plaintiff has not engaged in substantial gainful activity since March 30, 2013, his alleged onset date. AT 17. ALJ Black-Pennington then concluded, at step two, that plaintiff suffers from several severe impairments which limit his ability to perform basic work activities, including degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the right shoulder, and a bilateral leg

---

[4]     That test is described further on in this opinion. *See* pp. 11-14, *post.*

disorder. AT 17. *Id.* At step three, ALJ Black-Pennington concluded that plaintiff's conditions, whether taken alone or in combination, do not meet or medically equal in severity any of the presumptively disabling impairments listed in the Commissioner's regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1. AT 21.

ALJ Black-Pennington next proceeded to survey the available evidence, concluding that plaintiff retains the residual functional capacity ("RFC") to perform light work, subject to the following additional limitations:

> stand/walk in up to 30-minute intervals; sit in 30-minute intervals; avoid rapid neck movements; not able to perform overhead reaching; able to occasionally climb stairs or ramps; avoid climbing ladders, scaffolds and ropes; and avoid unprotected heights, vibrations and heavy moving mechanical parts.

AT 21. Applying that RFC, ALJ Black-Pennington concluded that plaintiff's RFC prevents him from performing his past relevant work as a corrections officer because the demands of the position exceed the exertional limitations of his RFC. AT 27-28.

At step five, the ALJ consulted the medical-vocational guidelines set forth in the regulations ("grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and concluded that a finding of no disability would be required under Medical Vocational Rule 202.21 if plaintiff retained the RFC to perform a full range

of light work. AT 28. After consulting with a vocational expert to determine the extent of job base erosion resulting from plaintiff's non-exertional limitations, ALJ Black-Pennington concluded that despite his conditions, plaintiff is capable of working in positions that are available in sufficient numbers in the national economy, including as a security guard, companion, receptionist, courier, parking lot attendant cashier, and hospital television rental clerk, and therefore held that plaintiff was not disabled at the relevant times. AT 28-29.

On June 14, 2015, plaintiff requested review of ALJ Black-Pennington's unfavorable decision. AT 134-35; *see also* AT 180-89. Upon denial of plaintiff's request for review of the ALJ's decision by the Social Security Administration Appeals Council on June 29, 2017, the opinion became a final determination of the agency. AT 1-6.

B.    Proceedings Before This Court

The present action was commenced on September 2, 2017. Dkt. No. 1. Following the filing by the Commissioner of the administrative transcript of proceedings and evidence before the agency on April 3, 2018, Dkt. No. 12, plaintiff submitted a brief on September 13, 2017, Dkt. No. 15. The Commissioner responded with a brief filed on July 2, 2018. Dkt. No. 16.

Pursuant to General Order No. 18 of this court, the matter is now

considered as having been submitted on cross-motions by the parties for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Martone*, 70 F. Supp. 2d at 148 (citing *Johnson*, 817 F.2d at 986). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have

reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401(1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be " 'more than a mere scintilla' " of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co.*, 308 U.S. at 229); *Martone,* 70 F. Supp. 2d at 148 (quoting *Richardson*, 402 U.S. at 401). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951; *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

When a reviewing court concludes that incorrect legal standards

have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed. 42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148. In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning. *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)). A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level. *See Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991). Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency. *See Parker*, 626 F.2d at 235; *see also Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health & Human Servs*., 705 F.2d 638, 644 (2d Cir. 1983).

    B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

    The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months[.]" 42 U.S.C. §

423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that he is not only unable
> to do his previous work but cannot, considering his
> age, education, and work experience, engage in
> any other kind of substantial gainful work which
> exists in the national economy, regardless of
> whether such work exists in the immediate area in
> which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he
> applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be

employed in determining whether an individual is disabled. *See* 20 C.F.R.

§§ 404.1520, 416.920. The first step requires a determination of whether

the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further. *Id.* §§

404.1520(b), 416.920(b). If the claimant is not gainfully employed, then the

second step involves an examination of whether the claimant has a severe

impairment or combination of impairments which significantly restricts his

or his physical or mental ability to perform basic work activities. *Id.* §§

404.1520(c), 416.920(c). If the claimant is found to suffer from such an

impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or his past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.   Analysis

The pivotal finding that ultimately led to a denial of plaintiff's claim was ALJ Black-Pennington's determination that he retains the RFC for light work, subject to the limitations outlined. Plaintiff argues that because he is unable to stand and/or walk for six hours in an eight-hour work day, he cannot perform the full range of light work and, as a result, substantial evidence fails to support ALJ Black-Pennington's determination. Dkt. No. 15 at 7. In response, the Commissioner asserts that the ALJ's decision is, in all respects, supported by substantial evidence. Dkt. No. 16.

1.   RFC Generally

A claimant's RFC represents a finding of the range of tasks she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013). An RFC determination is informed by consideration of "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *Tankisi*, 521 F. App'x at 33.

To properly ascertain a claimant's RFC, an ALJ must assess plaintiff's exertional capabilities, such as her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. §§ 404.1545(b), 416.945(b). Nonexertional limitations or impairments, including impairments that result in postural

and manipulative limitations, must also be considered. *Id.* When rendering

an RFC determination, the ALJ must specify those functions that the

claimant is capable of performing; conclusory statements concerning her

capabilities will not suffice. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris

v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)); *accord, e.g., Bump v.

Comm'r of Soc. Sec.*, No. 15-CV-1077, 2016 WL 6311872, at *3 (N.D.N.Y.

Oct. 28, 2016) (Suddaby, C.J.). In addition, the ALJ's RFC determination

must be supported by substantial evidence. *Ferraris*, 728 F.2d at 587;

*accord, Bump*, 2016 WL 6311872, at *3.

Importantly, the ALJ is tasked with the responsibility of reviewing all

the evidence before her, resolving inconsistencies, and making a

determination consistent with the evidence as a whole. *See Camarata v.

Colvin*, No. 6:14-CV-0578, 2015 WL 4598811, at *9 (N.D.N.Y. July 29,

2015) (D'Agostino, J.) ("[I]t is the province of the ALJ to consider and

resolve conflicts in the evidence as long as the decision rests upon

'adequate findings supported by evidence having rational probative

force.' ") (quoting *Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008)).

However, because an ALJ is not required to strictly adhere to the entirety

of one medical source's opinion, the ALJ's conclusion need not "perfectly

correspond with any of the opinions of medical sources cited in his

decision, [because an ALJ is] entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order); *see Kikta v. Comm'r of Soc. Sec.*, No. 5:15-CV-0060, 2016 WL 825259, at *9 (N.D.N.Y. Feb. 9, 2016) (Baxter, M.J.) (citing *Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013) (summary order)). Consequently, there is no requirement that an ALJ accept every limitation in an opinion where portions of that opinion are not supported by the evidence. *See, e.g.*, *Crumedy v. Comm'r of Soc. Sec.*, No. 1:16-CV-1261, 2017 WL 4480184, at *5 (N.D.N.Y. Oct. 6, 2017) (Suddaby, C.J.); *Florek v. Comm'r of Soc. Sec.*, No. 1:08-CV-0919, 2009 WL 3486643, at *10 (N.D.N.Y. Oct. 21, 2009) (Mordue, C.J., *adopting report and recommendation of* Peebles, M.J.) ("the fact that the ALJ did not accept every limitation indicated by [the doctor] is not a ground for reversal or remand.").

### 2. Analysis of the ALJ's RFC Determination

According to plaintiff's medical records, he began treating with Dr. Luke Vincent Rigolosi ("Dr. Rigolosi"), a pain management specialist who routinely administered plaintiff's epidural steroid injections, in August 2011. Between then and March of 2013, Dr. Rigolosi observed that plaintiff was working, but that he suffered from a moderate disability. AT 511-16, 548-

50, 551-52, 555-56. In January 2014, plaintiff returned to Dr. Rigolosi, after a nearly ten-month lapse in treatment with him, complaining of pain in both his neck and back and rating his pain as an eight on a scale of ten. AT 540. Dr. Rigolosi reviewed plaintiff's cervical spine MRI results from January 2014 and lumbar spine MRI report from April 2013, and recorded the following observation:

> He has decreased range of motion of the cervical and lumbar spine. He has spasm. He has some left-sided PSIS tenderness. There are no focal neurological deficits.

AT 540. From that point forward, Dr. Rigolosi opined that plaintiff suffered from a marked, rather than moderate, disability. *Id.*; AT 530-31, 534-39, 591, 582, 577-80, 589-90, 622-23.

Although ALJ Black-Pennington found that Dr. Rigolosi "consistently opined" a "moderate disability," *see* AT 24, and plaintiff asserts that Dr. Rigolosi "consistently opined" a "marked disability," *see* Dkt. No. 15 at 7, reality falls somewhere between these two positions. This discrepancy is of no moment, however, because Dr. Rigolosi's assignment of a "moderate" versus "marked" disability was formed in the context of his treatment of plaintiff's work-related injury, a standard that is entirely different from that applicable to the assessment of a disability under the Act. *See Mortise v. Astrue*, 713 F. Supp. 2d 111, 125 (N.D.N.Y. 2010)

(Kahn, J. *adopting report and recommendation of* Bianchini, M.J.); *Rosado v. Shalala*, 868 F. Supp. 471, 473 (E.D.N.Y. 1994); *see also Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984) ("Although plaintiff's doctors had checked off that plaintiff was disabled on forms sent to the Workers' Compensation Board, the standards which regulate workers' compensation relief are different from the requirements which govern the award of disability insurance benefits under the Act. Accordingly, an opinion rendered for purposes of workers' compensation is not binding on the Secretary.").

Moreover, Dr. Rigolosi's opinion that plaintiff suffered either a "moderate" or "marked" disability fails to provide any insight into plaintiff's actual physical limitations. As a result, his opinions are of little to no value in determining plaintiff's RFC. *See Mortise*, 713 F. Supp. 2d at 125 ("[A]n opinion concerning the ultimate issue of disability, from any source, is reserved to the commissioner."); *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 267 (N.D.N.Y. 2013) (noting that it was proper for the ALJ to give "little weight" to an opinion that the plaintiff was severely disabled and not competitively employable because that concerned an issue reserved to the Commissioner) (citing 20 C.F.R. § 416.927(d)(1)).

In addition to his work injury assessments, Dr. Rigolosi did provide a

medical source statement dated March 18, 2014, in which he concluded

that plaintiff was totally disabled from performing his previous occupation

and that he was restricted to "sedentary work," which was defined on the

form utilized as involving occasional lifting up to a maximum of ten

pounds.[5] AT 628-29. Dr. Rigolosi further opined that plaintiff was able to

continuously stand, sit, drive, and walk for only up to an hour in a day, and

that he had the capacity for repetitive movement in both of his hands. AT

628. In an updated statement dated July 29, 2014, Dr. Rigolosi indicated

that plaintiff was restricted to lifting ten pounds with no repetitive bending

or twisting secondary to lumbar stenosis and cervical spinal stenosis. AT

626-27. Thereafter, in a third medical source statement, dated September

30, 2014, Dr. Rigolosi relaxed the limitations on plaintiff's capabilities,

opining that as a result of plaintiff's lumbar and cervical stenosis, he could

occasionally lift and carry up to fifty pounds. AT 562-68. He also found that

during an eight-hour work day, plaintiff could sit for up to four hours, stand

for up to two hours, and walk for up to two hours, and that plaintiff could sit

for thirty minutes at a time, stand for fifteen minutes at a time, and walk for

---

[5]     That form also indicates that plaintiff was disabled from other occupations
"based on [the] attached letter;" unfortunately, however, that referenced letter was not
included with the administrative transcript. AT 628.

fifteen minutes at a time. AT 563.

The record also contains the report of consultative expert Dr. Joseph Prezio ("Dr. Prezio"). AT 519-22. Based upon his examination, Dr. Prezio diagnosed plaintiff as suffering from a cervical neck impairment due to degenerative joint disease, low back pain with possible degenerative disc disease, bilateral knee pain with possible degenerative joint disease in both knees, and hypertension. AT 521-22. Dr. Prezio offered the following medical source opinion concerning plaintiff:

> Based on the current physical examination and the totality of the joints involved, this claimant has moderate restrictions with respect to prolonged standing, walking, squatting, kneeling, bending, and doing any heavy lifting or carrying any objects of any significant weight in view of the combination factors of his lower back and his knees. With respect to his neck, the claimant needs to exercise due caution with respect to engaging in any rapid neck movements that, if they could not be accomplished, could cause himself to be put in harms way or others in harms way in the immediate vicinity.

AT 522.

In arriving at her RFC finding, ALJ Black-Pennington reviewed plaintiff's testimony, plaintiff's work history, and the medical evidence before her in order to determine the appropriate weight to assign the opinions of Dr. Rigolosi and Dr. Prezio. She ultimately assigned "great

weight" to Dr. Prezio's opinion and "some weight" to Dr. Rigolosi's opinion. AT 24, 26. In according Dr. Rigolosi's opinion "some weight," the ALJ noted that although he was a "longtime treating specialist[]," his opinion on whether plaintiff was "disabled" under the Act was not entitled to either controlling weight or special significance. AT 27.

Although there is no doubt that an "ALJ cannot arbitrarily substitute his [or her] own judgment for a competent medical opinion," there is similarly no requirement that ALJ Black-Pennington strictly adhere to all aspects of the opinion of Dr. Rigolosi or any other medical opinion. *Matta*, 508 F. App'x at 56. Rather, ALJ Black-Pennington was entitled, as she did here, to "weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Id.* Because it is clear that ALJ Black-Pennington considered and resolved conflicts in the medical opinions that she had before her, I find that her decision rests upon " 'adequate findings supported by evidence having rational probative force.' " *Camarata*, 2015 WL 4598811, at *9 (quoting *Galiotti*, 266 F. App'x at 67).

Finally, I find no merit to plaintiff's argument that because he is not capable of standing and/or walking six hours in an eight-hour workday, he is unable to perform light work.[6] Dkt. No. 15 at 3-7 (citing Social Security

---

[6] By regulation, "light work" is defined as follows:

Ruling ("SSR") 83-10, 1983 WL 31251, at *6 (1983). While it is true that "the full range of light work requires standing or walking, off and on, for a total of approximately [six] hours of an [eight]-hour workday," SSR 83-10, 1983 WL 31251, at *6, ALJ Black-Pennington did not conclude that plaintiff was capable of meeting the exertional demands of a full range of light work. AT 21. Instead, she weighed the medical opinion evidence and concluded that plaintiff retained the RFC to perform light work with certain exertional limitations. *Id.* The mere fact that the ALJ found plaintiff capable of performing less than a full range of light work in no way eliminates every occupation listed in the Dictionary of Occupational Titles at the light exertional level. Instead, "an ALJ can properly find a claimant capable of performing a limited range of work in a given exertional category and then

_____

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567.

elic [vocational expert] testimony to determine whether that claimant is disabled," as was done in this instance by the ALJ. *Gravel v. Barnhart*, 360 F. Supp. 2d 442, 448 (N.D.N.Y. 2005) (Sharpe, J.) (citing SSR 83-12, 1983 WL 31253 (1983)).[7]

Accordingly and for these reasons, I conclude that the ALJ's RFC

---

[7]    In relevant part, SSR 83-12 provides that:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)

> There are some jobs in the national economy-- typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring [sic] work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base.

SR 83-12, 1983 WL 31253, at *4.

determination is supported by substantial evidence.

IV.  SUMMARY AND ORDER

The Commissioner's determination in this matter is supported by substantial evidence and resulted from the application of proper legal principles. Accordingly, it is hereby

ORDERED that judgment on the pleadings be GRANTED to defendant, the Commissioner's determination be AFFIRMED, and the clerk is respectfully directed to enter judgment DISMISSING plaintiff's complaint (Dkt. No. 1) in its entirety; and it is further

ORDERED that the clerk of the court serve a copy of this decision and order upon the parties in accordance with this court's local rules.

_____
David E. Peebles
U.S. Magistrate Judge


Dated:     December 19, 2018
           Syracuse, New York